1 | Joel R. Isaacson - Bar No. 117895
Attorneys at Law
2 | 10250 Constellation Blvd., Suite 2900
Los Angeles, California 90067
3 | Telephone: (310) 881-6800
Fax: (310) 881-6801
4 | joelrisaacson@aol.com

5 | LAW OFFICE OF KIANA SLOAN-HILLIER
Kiana Sloan-Hillier, SBN No. 209887
6 | 1901 Avenue of the Stars, Suite 615
Los Angeles, CA 90067
7 | Tel: 310/556-1911
Fax: 310/861-1463
8 | kianahillier@yahoo.com

9 | Attorneys for MICHAEL SMITH

10

11 | IN THE UNITED STATES DISTRICT COURT

12 | FOR THE CENTRAL DISTRICT OF CALIFORNIA

13

14

15

UNITED STATES OF AMERICA,        CASE NO. CR 11-191-PA
16 |                                )
                                   ) DEFENDANT'S   POSITION   RE:
17 |              Plaintiff,        ) SENTENCING; OBJECTIONS TO THE PSR;
                                   ) EXHIBITS
18 |       vs.                      )
                                   )
19 | MICHAEL SMITH,                 )
                                   )
20 |              Defendant.        )
                                   )
21 | _____ )

22 |       COMES NOW DEFENDANT MICHAEL SMITH AND HIS ATTORNEY OF

23 | RECORD, JOEL R. ISAACSON, before the Court and hereby submits his position with

24 | respect to sentencing factors. Said position is based upon the memorandum of points and

25 | authorities attached hereto, the stipulated statement of facts as set forth in the plea agreement,

26

27

28 | ///

1   the files and records in this case, and such further evidence and arguments as may be heard

2   by the Court at the sentencing hearing in this matter.

3   Dated: August 15, 2011                    Respectfully submitted,

4

5                                             _____/s/_____
                                              Joel R. Isaacson
6                                             Counsel for defendant
                                              Michael Smith
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**INTRODUCTION**

3      The purpose of this memorandum is to ask the Court at the time of sentencing to

4  sentence Mr. Smith to probation, home detention and community service. Addressing both

5  the United States Sentencing Guidelines and the 18 U.S.C. § section 3553, subdivision (a)

6  factors and concerns, the sentence requested by the defense adequately reflects the offense

7  seriousness, promotes respect for the law, provides just punishment, affords adequate

8  deterrence, and provides treatment. The legal authority and supporting facts are discussed in

9  the following sections.

10      Mr. Smith intends to offer evidence in mitigation, and would respectfully direct the

11  Court to the compelling factors and circumstances in this case, with the hope that the Court

12  will be persuaded that the sentence requested by the defense is the only appropriate sentence

13  in this case.

14      While justice may require a prison sentence, it does not require retribution that is blind

15  to the circumstance of the man standing before the Court. District courts cannot just add up

16  figures and pick a number within a narrow range. Rather, they must consider all of the

17  applicable factors, listen to defense and government counsel, and sentence the person before

18  them as an individual. That is what the Court is asked to do here.

19

**THE PLEA AGREEMENT**

20      The parties agreed to the following guideline calculations. (PA ¶ 9.)

21  Base Offense Level            9              U.S.S.G. § 2C1.2(a) (1)

22  More than One Gratuity        2              U.S.S.G. § 2C1.1(b) (1)

23  Amount of Gratuities
    More than $10,000            +4             U.S.S.G. § 2C1.1(b) (2);
24                                              U.S.S.G. § 2B1.1 (b) (1) (C)

25  Total Offense Level           15

26  Acceptance of Responsibility  - 2

27  Offense Level                 13  (guideline range 12-18 months)

28

3

1    In addition, the parties reserved the right to argue that additional specific offense

2  characteristics, adjustments, and departures under the sentencing Guidelines are appropriate.

3  There is no agreement as to Mr. Smith's criminal history. The government agrees to

4  recommend a sentence no higher than the low end of the applicable Sentencing Guidelines

5  range, provided that the offense level used by the Court to determine that range is 13 or higher

6  and provided that the Court does not depart downward in offense level or criminal history

7  category.

8                                  **THE PROBATION REPORT**

9    The Probation Officer calculated the guideline offense level as follows:

| | | |
|---|---|---|
| Base Offense Level | 9 | U.S.S.G. § 2C1.2(a) (1) |
| More than One Gratuity | 2 | U.S.S.G. § 2C1.1(b) (1) |
| Amount of Gratuities More than $10,000 | +4 | U.S.S.G. § 2C1.1(b) (2) U.S.S.G. § 2B1.1 (b) (1) (C) |
| Role in the Offense | 4 | U.S.S.G. §3B1.1(c) |
| Total Offense Level | 19 | |
| Acceptance of Responsibility | - 3 | |
| Offense Level | 16 | (guideline range 21-27 months) |

18    According to the Probation Officer, "The USAO indicated that, in addition to the

19  guideline sentence enhancements specified in the Plea Agreement, a four-level enhancement

20  for aggravating role is warranted. PSR ¶ 8. It is anticipated that the government will be

21  seeking a sentence of 21 months.

22  **A.     Objections to the Probation Report**

23       **1.     A Four-Level Increase for Role in the Offense is not Warranted**

24    The defense objects to a four-level increase for role in the offense. The meaning and

25  purpose of the "manager, supervisor," etc. language lists factors the Court should consider.

26    1. exercise of decision-making authority,

27    2. nature of participation in the offense,

28    3. recruitment of accomplices,

1    4. claimed right to a larger share in criminal profits,

2    5. degree of participation in planning or organization,

3    6. nature and scope of the illegal activity, and

4    7. degree of control and authority over others.

5         In order to apply the sentencing enhancement for role in the offense, the government

6    has the burden to prove Mr. Smith's managerial status by a preponderance of the evidence.

7    This burden requires substantial proof that Mr. Smith "exercised some control over others

8    involved in the commission of the offense [or was] responsible for organizing others for the

9    purpose of carrying out the crime." See *United States v. Harper*, 33 F.3d 1143, 1150 (9th Cir.

10   1994); *United States v. Scholz*, 907 F.Supp. 329, 332 (D. Nev. 1995), aff'd, 91 F.3d 157 (9th

11   Cir. 1996). "The defendant is entitled to the benefit of any doubt as to his managerial status."

12   *Scholz*, 907 F.Supp. at 333. In resolving disputed issues of fact at sentencing, a district court

13   is not bound by the Federal Rules of Evidence or all of the constitutional protections afforded

14   a defendant at trial. See *United States v. Marin-Cuevas*, 147 F.3d 889, 894-95 (9th Cir. 1998);

15   *United States v. Petty*, 982 F.2d 1365, 1367-68 (9th Cir. 1993). The Ninth Circuit has held

16   that a sentencing court may consider hearsay statements so long as they are accompanied by

17   "some minimal indicia of reliability." *Petty*, 982 F.2d at 1369.

18        In *United States v. Huckins*, 53 F.3d 276 (9th Cir. 1995), the court recognized that a

19   defendant's right to due process may be violated where the sentencing court relied on the

20   hearsay statements of an accomplice when determining whether to increase a sentence. *Id*.

21   at 279.

22        In *Scholz*, the government established that the defendant, who was convicted of

23   operating two or three marijuana grow sites in Reno, Nevada, recruited his wife and brother

24   into the operation; selected the sites for the operation; exercised decision-making authority

25   with respect to planting and harvesting techniques; paid his brother a salary, and arranged

26   with his codefendant to take half of the profits generated. *Scholz*, 907 F.Supp. at 333-34.

27        Despite finding that "*Scholz* wielded managerial authority over the marihuana-growing

28   operation," *id*., the court declined to find him an organizer or leader for sentencing purposes

5

1 │ because "*Scholz*'s grow houses form a part of the larger operation. . . . [so] *Scholz* appears not

2 │ to have occupied a position of much authority in the overall scheme." *Id*.

3 │       Likewise, it appears that the instant scheme involved many individuals, one or more

4 │ of whom introduced the scheme to defendant. The conduct of the others was for self-

5 │ enrichment and independent of any encouragement or direction by Mr. Smith.  Under these

6 │ circumstances, to apply this enhancement at its maximum of four levels would be

7 │ unreasonable and clearly erroneous.

8 │       If the Court finds that a role enhancement is appropriate, it is respectfully submitted

9 │ that no more than two-level for role in the offense is warranted. Although defendant does not

10 │ concede that any enhancement for aggravating role is applicable, a legal analysis regarding

11 │ the propriety of a two-level upward departure instead of the four-levels urged by the probation

12 │ officer may be of assistance to the Court's ultimate determination of this factor.

13 │       U.S.S.G. Section 3B1.1(c) permits the district court to increase a defendant's offense

14 │ level by two levels if it finds that the defendant was an "organizer, leader, manager, or

15 │ supervisor" in the offense.  According to the background notes related to § 3B1.1:

16 │      . . . In relatively small criminal enterprises that are not otherwise to be

17 │      considered as extensive in scope or in planning or preparation, the distinction

18 │      between organization and leadership, and that of management or supervision,

19 │      is of less significance than in larger enterprises that tend to have clearly

20 │      delineated divisions of responsibility. This is reflected in the inclusiveness of

21 │      §3B1.1(c).

22 │   In *United States v. Maldonado*, 215 F.3d 1046, 1050 (9th Cir.2000) (When a defendant

23 │ supervises other participants, she or he need exercise authority over only *one of the other*

24 │ *participants to merit the two-level adjustment*. A single incident of persons acting under a

25 │ defendant's direction is sufficient evidence to support a two-level role enhancement.) (Italics

26 │ supplied.)  Defendant Maldonado did the negotiating and provided the drugs to the agents.

27 │ Vargas worked for Maldonado and attended many meetings with Maldonado involving drug

28 │ trafficking.  When the agents bought drugs during these meetings, Vargas received payment

1   and delivered the money to Maldonado. Although less involved than Vargas, Lopez worked

2   under Maldonado's direction, and at least once delivered drugs to a buyer at Maldonado's

3   request. This evidence was found sufficient for the district court properly to apply the two

4   level enhancement based on a finding that the defendant played a managerial role in the

5   offense. Tellingly, the court did not apply a four level enhancement.

6        The scope of the instant scheme does not call for a four-level sentencing enhancement.

7   If the Court finds that defendant directed another person, it is the two-level enhancement that

8   should be applied, not the four-levels adopted by the probation officer.

9                    **DEFENDANT'S HISTORY AND CHARACTERISTICS**

10       Defendant was born on August 17, 1966, in Encino, California, and is 44 years old.

11  He was raised in a "happy stable home". He has been married to his wife, Cindy, for twelve

12  years and has one son, Cole, who is nine-years-old and in the third grade. During the past

13  year, Cole has performed at unpaid engagements as a drummer in a child rock band which

14  Smith manages. See Newspaper article, Exhibit A. Cole is unaware of defendant's legal

15  situation.

16       Defendant is a generous and community minded individual, as evidenced by his

17  charity towards his friends and community. Since Christmas 2010, a family who lost their

18  uninsured mobile home to a fire is living with defendant's family until they are able to afford

19  new housing. Tony and Marcella Follett and their two young children live rent free in Smith's

20  home. They do not pay rent to defendant, but do pay for their own food and other living

21  expenses. The Folletts were friends with defendant  prior to the loss of their home, and are

22  aware of his legal situation. See Letter from Follett and newspaper article, Exhibit B.

23       Defendant's relationship with the Follett family began when he and Mr. Follett became

24  acquainted through alcoholics anonymous. See Exhibit B.

25       I have known Mike Smith for fifteen plus years through an association called

26       Alcoholics Anonymous where I myself have been clean & sober for 23 plus

27       years. Through the years we have spent time together participating in different

28       activities and common interests.

**7**

1 | Exhibit B.

2 | According to the letter to the Court from the Folletts:

3 | . . . After my own home was burned down by an arsonist in Nov 2010, Mike

4 | came to me and my wife offering help and condolences by allowing us and our

5 | two small children to stay with his family in their home. Mike Smith wants us

6 | to save money towards our next home so he won't accept any payment from us.

7 | Moving has taken longer than we have anticipated but Mike has given us the

8 | security of knowing that as long as it takes for us to get another place of our

9 | own we are welcome to stay with him. He insists that the next move should be

10 | permanent for the stability of our family. In the mean time Mike has included

11 | our family into many of his own family activities and makes my children feel

12 | special and a part of the Smith family. A portion of my children's healing can

13 | be directly attributed to their contact with Mike Smith. The fire was started in

14 | their bedroom while we went to visit their grandma for Thanksgiving. My

15 | children lost everything they had and haven't been home since Nov 2010. My

16 | daughter chose my Mike Smith as the grown up hero to write about for one of

17 | her 3rd grade assignments.

18 | Exhibit B.

19 | In addition to taking in the homeless family, defendant has also been involved on a

20 | volunteer level in the Special Olympics, and acts as a sponsor and mentor for those struggling

21 | with addiction issues through Alcoholics Anonymous. See letter from Special Olympics,

22 | attached as Exhibit D; Exhibit E, letters from family and friends.

23 | Defendant suffers from a number of health and psychological disorders, for which

24 | he is receiving medication and treatment. Defendant suffers from spinal stinosis, a painful

25 |

26 |

27 |

28 |

1  degenerative disease for which he sparingly takes Vicoden.[1] He also has a history of chronic

2  ear infections. Currently, he is suffering from low-testosterone depression, for which he takes

3  medication.

4  Defendant also suffers from depression which is so severe that he has been declared

5  disabled to the extent that he receives state disability. PSR His psychotherapist has been

6  seeing defendant since October 4, 2010, for weekly therapy sessions. Defendant continues to

7  have major depression, anxiety, and trouble sleeping, for which he takes prescribed

8  medications and weekly psychotherapy to work through his problems.  A note submitted to

9  the probation officer by defendant's a psychiatrist states that defendant has been under her

10  care since October 4, 2010, and has been diagnosed with major depression for which he has

11  been prescribed 30 mg. of Lexapro, 30 mg. of Reatovil, and 100 mg. of Trazadone. PSR

12  Although defendant initially sought treatment believing his depression and anxiety

13  were the result of work and legal issues, his therapist feels he continues to need ongoing

14  therapy to deal with his presenting problems. In her letter to the probation officer, defendant's

15  therapist states that defendant's depression and anxiety more severe and pervasive than

16  defendant was previously aware:

17  Although his current depression and anxiety are closely linked to the

18  difficulties that ensued while he was working with his father I believe they go

19  much deeper than that.[Defendant] is currently not working and due to his

20  depression, anxiety, lack of sleep, and low energy levels his ability to find and

21  maintain a job at the present time would be challenging, if not impossible.

22  My professional opinion is that [defendant] will need to continue in

23  therapy for quite some time to work on the issues and history that have

24

25  [1]

Spinal Stenosis is a condition due to narrowing in and around the spinal canal
26  causing nerve pinching which leads to persistent back pain, pain in the buttocks,
limping, lack of feeling in the lower extremities, and decreased physical activity.
27  There are several different types of spinal stenosis affecting all regions of the spine
(cervical, thoracic and lumbar spine). http://www.spinalstenosis.org.
28

1          contributed to his current depression. [Defendant] is also taking medication for

2          these issues as prescribed by a medical professional.

3    Letter from therapist, Exhibit C; PSR § 92.

4                                        **ARGUMENT**

5           The purpose of this memorandum is not to contest or dispute the seriousness of Mr.

6    Smith's conduct as described in the factual basis of his plea, but rather to identify, assess and

7    apply the correct sentencing law, and to introduce the Court to the compelling reasons why

8    the Court should exercise its discretion and sentence the defendant to probation, home

9    detention, and community service.

10          Mr. Smith would respectfully direct the Court to the compelling factors and

11   circumstances in this case, with the hope that the Court will be persuaded that the sentence

12   requested by the defense is the only appropriate sentence in this case.  In so finding, the Court

13   must be mindful of the guidelines, while balancing the 18 U.S.C. 3553 factors it is compelled

14   to consider. The legal authority and supporting facts for the defendant's position are discussed

15   in the following sections.

16   **A.      A Sentence of Probation with Substantial Community Service, Home Detention,**

17   **        and a Fine Is Warranted.**

18          When considering adequate deterrence to criminal conduct, it should be noted that, a

19   felony conviction and a substantial period of community service and home detention, does not

20   constitute a "free ride," and in fact, are punishments more than adequate for the purpose of

21   both general and specific deterrence, and will dissuade Mr. Smith and others from similar

22   criminal conduct. See *United States v. Autery*  555 F.3d 864 (9th Cir. 2009) [where defendant

23   convicted of possession of pornography and guidelines were 41-51 months, the court's *sua*

24   *sponte* variance to probation was not unreasonable, in part because in light of the district

25   court's 'stern warning' of a maximum sentence to follow any violation, it was "improbable that

26   the district court's stern warning will be an ineffective deterrent in this case."]; see also,

27   *United States v. Whitehead*, 532 F.3d 991 (9th Cir. 2008) [where the defendant was convicted

28   of supplying counterfeit access cards causing a loss of  $1 million dollars, and where

1    guidelines were 41-51 months, the court's sentence of probation with "substantial amount of

2    community service" -1000 hours-and substantial restitution is not abuse of discretion.]

3           Based on defendant's post offense rehabilitation, any term of imprisonment in this

4    case would be counter effective by depriving society of defendant's contribution. Further,

5    incarceration would be contrary to the mandate that the Court consider defendant's need for

6    treatment. Defendant is obtaining ongoing treatment which would not be available to him in

7    prison.

8           It is clear from defendant's post-offense conduct that he understands the consequences

9    of his criminal conduct and is doing everything in his power to forge a new life. Mr. Smith's

10   post-offense conduct indicates neither that he will return to criminal behavior nor that he is

11   a danger to society. Importantly, defendant's post-offense conduct, including his contributions

12   to family and community,  was not motivated by a desire to please the Court or any other

13   governmental agency, but was product of his own desire to lead a better life and to give back

14   to those in need. *Gall v. United States,* 552 U.S. 38, 44-45 [128 S.Ct. 586, 593-94, 169

15   L.Ed.2d 445] (2007).In the five years since Mr. Smith committed the offense to which he has

16   pled guilty, he has stayed out of trouble and committed himself to family and community.

17   These are legitimate factors for the court to consider in determining the sentence.

18           While custodial sentences are "qualitatively more severe than probationary sentences

19   of equivalent terms",probation does subject a defendant to several standard conditions that

20   "substantially restrict their liberty." See *United States v. Knights*, 534 U.S. 112, 119, [122

21   S.Ct. 587, 151 L.Ed.2d 497] (2001) ("Inherent in the very nature of probation is that

22   probationers 'do not enjoy the absolute liberty to which every citizen is entitled' " (quoting

23   *Griffin v. Wisconsin*, 483 U.S. 868, 874, [107 S.Ct. 3164, 97 L.Ed.2d 709] (1987)).

24   Probationers are restricted to the judicial district of their probation, and may not move or

25   change jobs without notifying, and in some cases receiving permission from, their probation

26   officer or the court."They must report regularly to their probation officer, permit unannounced

27   visits to their homes, refrain from associating with any person convicted of a felony, and

28   refrain from excessive drinking." U.S.S.G. § 5B1.3.

1    In *United States v. Tomko* 562 F.3d 558 (3d Cir. 2009) (*en banc*), the district court did

2 not abuse its discretion in sentencing a defendant to probation with a year of home detention,

3 community service, restitution, and fine for tax evasion, rather than to term of imprisonment

4 where the guidelines range was 12 to 18 months. The court reasoned that the defendant had

5 a negligible criminal history, a solid employment record, community ties, and had extensive

6 charitable works).

7    In *United States v. Whitehead*, 532 F.3d 991 (9th Cir. 2008), the defendant was

8 convicted of supplying counterfeit  access cards causing loss of  $1 million dollars allowing

9 customers free access to digital televison. The  guideline range was 41-51 months. On review,

10 the court's sentence of probation with "substantial amount of community service" -1000

11 hours—and substantial restitution was not abuse of discretion where "the court believed that

12 Whitehead had repented his crime; since his conviction he had devoted himself building an

13 honorable life; his eight-year-old daughter depended on him and he doted on her. In addition,

14 the court reasoned that Whitehead's crime "[di]d not pose the same danger to the community

15 as many other crimes. These are all considerations that the district court may properly take

16 into account. See 18 U.S.C. § 3553(a)(1)-(2).";

17    Here, defendant is the primary care giver for his young son and according to the letter

18 to the Court from Mrs. Smith, the defendant is needed to stay at home to continue in that role.

19 He stays home and cares for the home while his wife works full time. Defendant also manages

20 the very successful band in which is son is the drummer, and all of the kids in the band rely

21 on him. In addition, he is active in Alcohol Anonymous and volunteers with the Special

22 Olympics. He has mental and physical health issues that require ongoing physical and

23 psychological therapy not available in the Bureau of Prisons. His crime, while serious, does

24 not pose the same danger to the community as some other crimes. A probationary sentence

25 with substantial community service, together with the $30,000 fine defendant is required to

26 pay pursuant to his plea agreement, satisfies all the statutory sentencing goals.

27    As noted in *United States  v. Vega*  545 F.3d 743 (9th Cir. 2008),the Ninth Circuit

28 agrees with the Seventh Circuit that  the imposition of . . . community service conditions will

1  further the statutory goal of providing 'the defendant with needed educational or vocational

2  training, medical care, or other correctional treatment in the most effective manner.' (quoting

3  18 U.S.C. § 3553(a)(2)(D) . . . community service is another opportunity for a defendant to

4  obtain education and vocational training.")

5       The Court is respectfully requested to impose a sentence of probation, home detention

6  and substantial community service.

7  **CONCLUSION**

8       Defendant submits that probation, home detention, community service and a $30,000 fine are

9  a just and appropriate application of the 18 U.S.C., section 3553, subdivision (a) factors and satisfies

10  the statutory requirement that the Court impose punishment "sufficient, but not greater than

11  necessary" to comply with the purposes set forth in Section 3553(a)(2).  Importantly, the requested

12  sentence is also entirely consistent with the Guidelines.

13       When examining the punishment in relation to the offenses, as 18 U.S.C. § 3553(a) requires,

14  it cannot be denied that, in relation to this offense, the requested sentence  results in a punishment

15  that adequately "reflect the seriousness of the offense" and is all that is necessary to impress upon Mr.

16  Smith that the government and this Court take serious all of his illegal conduct.

17       In considering the need to protect the public from further crimes of the defendant, it is Mr.

18  Smith's sincere hope that he will soon be able to prove  to himself, his family, the government, and

19  to this Court, that he is not a risk to the public, by going on to live a pro-social and pro-government

20  life.  Mr. Smith has shown that he is capable of living a productive life and becoming an asset to the

21  community. He no longer represents a threat to society or to others, and is unlikely to recidivate.

22       It is respectfully submitted to this Honorable Court that, under the totality of the

23  circumstances, and on the basis of the arguments set forth herein, that Court impose the sentence

24  requested by defendant.

25  Dated: August 15, 2011                   Respectfully submitted,

26

27                          __/s/_____
                        Joel R. Isaacson
                        Attorney for Michael Smith

28